STATE OF MAINE                                         SUPERIOR COURT

Cumberland, ss.                                         Civil Action

MATTHEW EASTWICK,                )
                                 )
                Movant           )
                                 )
        v.                       )                Docket No. CUMSC-CV-16-0398
                                 )
CATE STREET CAPITAL, INC.,       )                    STATE OF MAINE
                                 )                Cumberland ss. Clerk's Office
                Respondent       )
                                                      JAN 09 2017

### ORDER ON PENDING MOTIONS                         RECEIVED

Movant Matthew Eastwick's Motion to Confirm Binding Arbitration Award and

Respondent Cate Street Capital, Inc.'s Motion to Vacate are both before the court, as is Movant's

Motion for Attachment and Attachment Upon Trustee Process.      Oral argument was held

January 5, 2017, after which the court took the motions under advisement.

### *Background*

The pertinent factual background is as follows:

Movant Eastwick was employed by Respondent Cate Street Capital, Inc. ["Cate Street"]

from 2010 until February 2016 under an employment agreement that included the following

dispute resolution process:

> In the event any dispute arises between the parties to this Agreement, the matter shall be
> submitted promptly to mediation. In the event that mediation is unsuccessful, the dispute
> shall be submitted for arbitration in accordance with the rule [sic] of the American
> Arbitration Association.

Nov. 7, 2016 Affidavit of Robert Desrosiers ¶ 3.

A dispute arose under the employment agreement after Mr. Eastwick had left Cate Street's

employ, and, consistent with the provision, the parties selected Patrick Coughlan of the Conflict

Solutions firm as a mediator. A mediation session occurred July 27, 2016 and the parties reached a

1

settlement of their dispute. To memorialize the settlement, the parties signed a Memorandum of Understanding [hereinafter "the MOU"], providing in part as follows:

- termination of the employment agreement between the parties

- an exchange of releases in "standard terms" covering all claims between the parties and also providing for confidentiality

- payment by Cate Street to Mr. Eastwick of $100,000 within 30 days of the effective date of the release and $15,000 per quarter for 10 quarters beginning January 15, 2017

- a provision authorizing Mr. Eastwick, if Cate Street failed to make a quarterly payment within 30 days of a demand, to "file a stipulated judgment for the outstanding amount due to him."

- a provision as follows: "Any disputes that may arise during the drafting and execution of the settlement shall be submitted to Patrick Coughlan for review and resolution."

Exhibit A to Affidavit of Matthew Eastwick in support of Movant's Motion for Attachment and Attachment on Trustee Process.

The MOU does not use the words "arbitrate" or "arbitrator" to describe Mr. Coughlan's role in reviewing and resolving disputes, and according to Cate there was never any mention on July 27, 2016 of Mr. Coughlan serving as an arbitrator. Nov. 7, 2016 Affidavit of Robert Desrosiers ¶6.

After the July 27, 2016 mediation, counsel for the parties negotiated the terms of the releases and other aspects of the settlement contemplated in the MOU. According to Movant Eastwick, those negotiations produced a written settlement agreement that included releases and the other components of the MOU and that counsel for both parties believed was satisfactory to both parties. *See* Exhibit C to Affidavit of Matthew Eastwick in support of Movant's Motion for Attachment and Attachment on Trustee Process (Decision Ex. B—Confidential Settlement

2

Agreement and Mutual Release of Claims). Mr. Eastwick signed it August 30, 2016, and he claims that Cate Street simply refused to sign it, for what later appeared to be financial reasons.

Cate Street's response is that it refused to sign the Confidential Settlement Agreement and Mutual Release of Claims because it improperly added to the terms of the MOU by including an acceleration provision to the settlement agreement, a contention Movant denies.

In any event, the parties and/or their counsel[1] returned to Mr. Coughlan on October 11, 2016. The notices sent by Mr. Coughlan's office ahead of that meeting refer to it as a "post mediation meeting." *See* Nov. 7, 2016 Affidavit of Robert Desrosiers, Ex. B (Conflict Solutions email and letter dated Sept. 26, 2016).

However, the day before the October 11, 2016 meeting, Mr. Eastwick's counsel sent Mr. Coughlan, with a copy to Cate Street's counsel, a letter enclosing Mr. Eastwick's "proposed exhibits" and a "proposed order" that clearly put Cate Street on notice that Mr. Eastwick viewed the "post mediation meeting" as an arbitration. Nov. 7, 2016 Affidavit of Robert Desrosiers ¶ 11, Ex. C (October 10, 2016 Letter from Melissa Hewey, Esq. to Patrick Coughlan with attachments). The attachments to attorney Hewey's letter included a draft Decision reciting that it was enforceable as an arbitration award. *See id.* (Decision draft, Conclusions of Law ¶ 3).

There is no transcript of the October 11, 2016 meeting but there seems to be no question that the participants and Mr. Coughlan discussed the disputes regarding the settlement that had arisen since the July 27, 2016 mediation. According to the Movant's reply memorandum, Mr. Coughlan attempted to mediate the disputes before ultimately signing the proposed Decision that Mr. Eastwick's counsel had forwarded the day before. Although Movant Eastwick suggests that Cate Street waived any objection to the Coughlan Decision, it appears that Cate Street objected to

---

[1] Movant Eastwick evidently did not attend the October 11, 2016 meeting, but his counsel did. Robert

3

the October 11, 2016 meeting as being anything other than a further mediation session and filed a written objection to the Decision.

Mr. Coughlan issuing a document titled Decision and dated October 11, 2016, containing findings of fact and conclusions of law, and adopting the Confidential Settlement Agreement and Mutual Release drafted by Movant's counsel and previously signed by him, as reflecting the terms of the settlement the parties had reached July 27, 2016.

Movant Eastwick commenced this action by filing a Motion to Confirm Binding Arbitration Award pursuant to the Maine Arbitration Act ["the Act"], 14 M.R.S. § 5937. Cate Street responded with a Motion to Vacate pursuant to section 5938(1)(E) of the Act, based on its contention that the parties never agreed to arbitrate the issues covered in the Coughlan Decision.

The primary issue raised in the parties' cross-motions is whether the parties agreed that Mr. Coughlan would arbitrate any issues arising out of the MOU.

Mr. Eastwick contends that the provision empowering Mr. Coughlan to resolve any disputes arising out of the drafting and execution of the parties' settlement was, in substance, an arbitration agreement. Mr. Eastwick also points out that the parties returned to Mr. Coughlan in October, knowing that the purpose of the additional session was to resolve the dispute regarding the settlement.

Cate Street contends that the parties agreed only to mediation through Mr. Coughlan, and that there is nothing indicating in the MOU or elsewhere in the record indicating that the parties agreed to engage Mr. Coughlan as an arbitrator. Cate Street says it returned to Mr. Coughlan in October based on the understanding that he would continue as mediator, and that it never consented to his assuming any role other than mediator.

4

*Analysis*

Cate Street's Motion to Vacate states, in its opening clause, that it is made pursuant to 14 M.R.S. § 5938(1)(E)—the subsection of the Maine Arbitration Act authorizing an arbitration award to be vacated on the ground that "[t]here was no arbitration agreement and the issue was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection . . ." *Id.*

As a threshold matter, the burden of persuasion merits discussion. Although it is Cate Street's Motion to Vacate that raises the issue of whether there was an arbitration agreement, it is Movant Eastwick, as the party seeking confirmation of the Coughlan Decision as an arbitration award, who has the burden to establish the existence of an agreement between him and Cate Street to arbitrate the matters addressed in the Decision.[2] Otherwise, Cate Street would be in the position of having to prove a negative.

Regarding the merits of the issue, there is no doubt that the parties initially designated Patrick Coughlan as a mediator only. The court file contains copies of the mediation agreement and other material that, taken as a whole, make it clear that his role at the July 27, 2016 mediation session was limited to that of mediator. However, as a result of that mediation session, the parties executed the MOU of the same date, documenting the terms of the settlement reached through mediation. According to Movant Eastwick, it is the MOU that establishes the agreement to have Mr. Coughlan arbitrate disputes arising out of the settlement.

The MOU was evidently drafted by all participants in the mediation session, so it will not be interpreted against either party. *See* Affidavit of Robert Desrosiers (Jan. 5, 2017) (""The

---

[2] The other elements of subsection 5938(1)(E) are not at issue. There has not been any prior determination in a proceeding to compel or stay arbitration pursuant to section 5928 of the Act, and Cate Street submitted a written objection to Mr. Coughlan's Decision at or just after the October 11, 2016 meeting. Although Movant Eastwick questions whether Respondent Cate Street's objection to arbitration was timely, this Order treats it as timely and sufficient to satisfy subsection 5938(1)(E).

drafting of the MOU was a joint effort among Patrick Coughlan, the parties and the parties' counsel. The exact wording used in the MOU was a collective or group effort").

On its face, the MOU is an integrated agreement, although it clearly contemplates the execution of "a mutual confidential release agreement," MOU ¶2. The MOU spells out the substance of the confidentiality provision in the to-be-executed release agreement and provides that the release agreement shall otherwise contain "standard terms." The Maine Law Court has held that a settlement agreement may be enforceable as a contract even though it contemplates the execution of further documents, such as a release. *See White v. Fleet Bank of Maine*, 2005 ME 72, ¶¶11-12, 875 A.2d 680, 683 (oral settlement agreement calling for written releases enforceable as a binding contract).

Moreover, the Mediation Agreement & Rules applicable to the mediation in this case provided: "A written agreement reached by the parties in the course of, or pursuant to, this mediation, that is signed by the parties, may be admitted in any court or administrative proceeding for the purpose of enforcing it." Nov. 7, 2016 Affidavit of Robert Desrosiers, Ex. A, Mediation Agreement & Rules ¶4.

Accordingly, the court concludes that Movant Eastwick has established that the MOU is an integrated binding settlement agreement.

However, the fact that the MOU may be enforceable as a contract does not answer the question presented here, which is whether the contract included an agreement to arbitrate disputes arising out of the drafting of settlement documents or execution of the settlement. If it did not, the MOU could still be the basis for a breach of contract claim, but it could not justify confirming the Coughlan Decision as an arbitration award.

In *Anderson v. Banks*, the Law Court addressed a situation in which the parties to a settlement agreement authorized the mediator to resolve disputes arising out of the settlement.

6

2012 ME 6, 37 A.3d 915. The parties' written agreement contained what was specifically designated as an arbitration provision. The arbitration provision in *Anderson* provided:

> ARBITRATION. The parties agree that any dispute regarding the interpretation, enforcement, or implementation or execution of this agreement or the documents necessary to effectuate it will be decided by binding arbitration by Jerrol Crouter. He shall award attorney fees and costs for any such arbitration against the unsuccessful party.

2012 ME 6 at ¶4, 37 A.3d at 917.

On appeal, the Law Court upheld the Superior Court judgment confirming the arbitration award, based on the arbitration clause and based also on the "broad presumption favoring substantive arbitrability", 2012 ME 6 at ¶19, 37 A.3d at 921, *quoting Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶13, 834 A.2d 131.

Mr. Eastwick argues that this case should follow the same path as *Anderson*, with a confirmation of the award. Cate Street responds that *Anderson* is clearly distinguishable because the settlement agreement in *Anderson* explicitly provided for arbitration whereas the MOU in this case does not.

Here, the only explicit arbitration provision agreed to between Mr. Eastwick and Cate Street appears in the above-quoted section of their employment agreement, calling for arbitration pursuant to the American Arbitration Association (AAA) rules "[i]n the event that mediation is unsuccessful."

Cate Street contends that the October 11, 2016 meeting could not have been an arbitration because it lacked the formalities associated with arbitration conducted according to the rules of the AAA—no evidence was presented, no witnesses were called, no opening statements or closing arguments were delivered, and in fact, Movant Eastwick was himself absent, participating through his counsel.

7

But Cate Street's argument overlooks the fact that the July 27, 2016 mediation session *was* successful—it produced the settlement documented in the MOU —meaning that, by the terms of the employment agreement, there was nothing left to arbitrate under the AAA rules. Also, the MOU executed July 27, 2016 by its terms superseded the employment agreement as the governing agreement between the parties.

Moreover, Cate Street went to the October 11, 2016 meeting knowing that Movant Eastwick intended to ask Mr. Coughlan to arbitrate the parties' dispute, and therefore cannot claim to have been unfairly surprised when Mr. Coughlan did exactly that. *See* Affidavit of Robert Desrosiers ¶ 11, Ex. C.

Thus, Cate Street's position boils down to the argument that the MOU is not an agreement to arbitrate because it omits any reference to arbitration. However, the absence of an express reference to arbitration is not determinative.

In a long line of federal and state court decisions originating with Judge Jack Weinstein's decision in *AMF, Inc. v. Brunswick Corporation,* courts have held that the existence of an arbitration agreement does not depend entirely on whether words such as "arbitrate" or "arbitration" appear in the agreement. *See AMF Inc. v. Brunswick Corp.,* 621 F. Supp. 456, 460 (E.D.N.Y. 1985) (Weinstein, J.); *see also, e.g., Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135,* 707 F.3d 140, 142-44 (2d Cir. 2013); *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.,* 374 F.3d 1, 14 (1ˢᵗ Cir. 2004); *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.,* 858 F.2d 825, 830 (2d Cir. 1988); *Sharp v. Kan. City Power & Light Co.,* 457 S.W.3d 823 (Mo. App. 2015).

"No magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute resolution' are needed to obtain the benefits of [arbitration]. . . . *If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration.'" AMF Inc.,* 621 F. Supp. at 460 (emphasis added).

8

Had the parties' MOU used the word "arbitrate," there would be no room at all for Cate Street's position. However, the absence of the word does not change the plain meaning of the provision: "Any disputes that may arise during the drafting and execution of the settlement shall be submitted to Patrick Coughlan for review and resolution." The plain meaning is that Mr. Coughlan would decide—not mediate—any such dispute between the parties. Mediators facilitate the parties' resolution of disputes, but they themselves do not resolve disputes. Arbitrators do.

At oral argument, Cate Street argued that the reference to disputes being "submitted to Patrick Coughlan for review and resolution" meant simply that he would engage the parties in further mediation. Cate Street pointed out that the word "resolve" appears in the mediation agreement between the parties and Mr. Coughlan's firm, Conflict Solutions, suggesting that the reference in the MOU to "resolution" means, in effect, more mediation. The mediation agreement in the record does use the word "resolve" several times,[3] but never states that the mediator will "resolve" disputes.

Although the agreement to arbitrate in this case is phrased differently than the arbitration provision in *Anderson*, it had the same effect—as a result of the parties' mediated settlement agreement, the mediator morphed into an arbiter of "any disputes" relating to the drafting and execution of the settlement. Whether the dispute that arose was one of drafting, as Cate Street suggests in contending that Mr. Eastwick's settlement agreement was drafted contrary to the MOU, or was one of execution, as Mr. Eastwick suggests in contending that Cate Street was trying to back out of its payment obligation, the dispute that arose between the parties was clearly

---

[3] The Mediation Agreement & Rules refers to the "issues that need to be resolved"; "Resolving conflicts usually takes a day . . ."; "The parties agree to set aside sufficient time to resolve this matter." *See* Nov. 7, 2016 Affidavit of Robert Desrosiers, Ex. A (Mediation Agreement & Rules).

a dispute of the variety that the parties agreed would be submitted to Mr. Coughlan for his review and resolution.

Cate Street's Motion to Vacate does not raise any basis for vacating the award other than the absence of an arbitration agreement.[*] As to that objection, Movant Eastwick has met his burden to demonstrate that the Decision constitutes an award made pursuant to an agreement to arbitrate. Accordingly, Movant's Motion to Confirm Binding Arbitration Award

However, the award reflected in the Decision is such as to raise a question as to the form of the judgment confirming the award. Movant Eastwick's Motion to Confirm Binding Arbitration Award requests that judgment confirming the award be entered for him in the amount of $250,000. However, the Decision does not award him that amount. Instead, the Decision adopts the Confidential Settlement Agreement and Mutual Release of Claims drafted and signed by Eastwick—referred to the Decision as "the Final Agreement"—as accurately stating the terms of the parties' settlement, and states: "Under the terms of the agreement reached at mediation, Cate Street is required to sign the Final Agreement within 3 days of the date of this Order and perform as provided in the agreement."

Because the Decision adopts the Final Agreement, confirming the Decision as an arbitration award requires the court to incorporate "the Final Agreement" into the judgment by

---

[*] The Maine Arbitration Act provides that an arbitration award "shall" be vacated on application of a party on several grounds beyond the sole ground advanced by Respondent Cate Street, including:

"A. The award was procured by corruption, fraud or other undue means;
B. There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
C. The arbitrators exceeded their powers;
D. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 5931, as to prejudice substantially the rights of a party . . ."

14 M.R.S. § 5938(1)

reference. However, Cate Street raises an issue as to the payment provisions of the Final Agreement.

The Final Agreement calls for Cate Street to pay Mr. Eastwick $100,000 within 30 days of "the Effective Date of this Agreement," and an additional $150,000 in ten quarterly $15,000 installments beginning January 15, 2017. *See* Exhibit C to Affidavit of Matthew Eastwick in support of Movant's Motion for Attachment and Attachment on Trustee Process (Decision Ex. B, Confidential Settlement Agreement and Mutual Release of Claims ¶ 1(a)-(b) at 1).

The Final Agreement also says that if Cate Street misses any installment payment and fails to correct it within 30 days of written demand, Mr. Eastwick may file a lawsuit and obtain "a stipulated judgment for the *then outstanding* installment payments due to him." *See id.* (Decision Ex. B, Confidential Settlement Agreement and Mutual Release of Claims ¶22 at 6) (emphasis added). The word "outstanding" also appears in the same context in the MOU.

Eastwick says the word "outstanding" refers to any remaining quarterly payments. Cate Street says the word "outstanding" refers only to any payment already past due.

The court agrees with Mr. Eastwick's interpretation of the word as it appears in both in MOU and the Final Agreement. The plain intent is to allow Mr. Eastwick to accelerate all payments and obtain judgment in the amount of all remaining unpaid installments if any one of them is not paid within 30 days of written demand. If the reference meant what Cate Street argues, it would refer to the past due amount, not the outstanding amount. Also, Cate Street's interpretation would mean that Mr. Eastwick would have to file a separate stipulated judgment for each missed payment as it became past due—and is therefore implausible, if not ridiculous.

Another question raised is as to the payment terms of the judgment. Plainly the initial $100,000 payment is long past due and that is Cate Street's doing. Had Cate Street signed the Final Agreement within three days of the Decision, as directed by Mr. Coughlan, the initial

11

payment would have come due in November 2016. However, Mr. Eastwick is not entitled to judgment for the entire $250,000, at least as of yet. The acceleration provision at paragraph 22 of the Final Agreement applies, on its face, only to late installment payments due under section 1(b), not to the initial payment due under section 1(a). Accordingly, the judgment will be for the $100,000 that is clearly past due, and will provide that the judgment may be amended for the entire unpaid amount if any installment payment is missed and not made within 30 days of a written demand for payment, as provided in the Final Agreement.

In addition, the judgment will incorporate what the arbitration award says were the nonmonetary aspects of the parties' settlement agreement by incorporating the Final Agreement by reference--the Confidential Settlement Agreement and Mutual Release of Claims signed by Mr. Eastwick will be attached to, and incorporated in, the judgment as a declaration of the parties' rights, duties and obligations.

One aspect of the parties' settlement that cannot be preserved intact in the judgment is the confidentiality provision. In fact, Cate Street asserts in its reply memorandum that "by failing to maintain the confidentiality of the parties' negotiations, Eastwick has destroyed an essential element of the parties' tentative agreement as set forth in their Memorandum of Agreement." *See* Reply in Support of Motion to Vacate at 1 n.1. Cate Street asserts that Mr. Eastwick should have asked the court to seal the parties' settlement agreement. But such a request would have been fruitless—any judgment confirming an arbitration award has to incorporate the terms of the arbitration award, and the award in this case incorporates the terms of the parties' settlement agreement, so the judgment has to reflect the agreement. It was Cate Street's failure to honor the settlement agreement that has deprived it of the benefit of confidentiality.

Lastly, Movant's Motion for Attachment and Attachment on Trustee Process is granted for the total amount due to Mr. Eastwick. Post-judgment attachment is permissible under Maine

12

law. *See Pease v. Jasper Wyman & Son*, 2004 ME 29, ¶¶ 9-11, 845 A.2d 552. Although the quarterly payments are not yet due, the Movant is being granted judgment in those amounts, so he is entitled to secure his entitlement through an attachment. *See id.* ¶ 10 ("[A] judgment, so long as it satisfies the standard set forth in Rule 4A [requiring that the order or writ state a specific dollar amount], can provide the basis for attachment even though it is not yet capable of execution.")

It is hereby ORDERED AND ADJUDGED AS FOLLOWS:

Movant Matthew Eastwick's Motion to Confirm Binding Arbitration Award is granted. The Decision of Patrick Coughlan adopting the Final Agreement as the mediated agreement of the parties is hereby confirmed as an arbitration award pursuant to 14 M.R.S. § 5937.

Respondent Cate Street Capital, Inc.'s Motion to Vacate is denied.

Movant's Motion for Approval of Attachment and Trustee Process is granted. The court hereby approves a writ of attachment and attachment upon trustee process in the total amount of $250,000.

Movant's Motion for Expedited Hearing is granted to the extent of this Order.

Judgment is entered separately herewith.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated January 9, 2017

A.M. Horton
Justice, Superior Court

13

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

DAVID STROCK, ESQ
MELINA CATERINE, ESQ
LITTLER MENDELSON
ONE MONUMENT SQ, STE 600
PORTLAND, ME 04101

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

MELISSA HEWEY, ESQ
DRUMMOND WOODSUM
84 MARGINAL WAY
SUITE 600
PORTLAND, ME 04101-2480